CHARLES D. WILKE, Plaintiff-Appellee, *v.* JOY M. WILKE, n/k/a Joy M. Clutter, Defendant-Appellant.

First District (3rd Division)   No. 76-1562

Opinion filed August 3, 1977.

Ebers, Metskas, Bjorvik & Kyros & Associates, of Chicago (Earl S. Ebers, Jr., of counsel), for appellant.

Haffner, Grow, Overgaard & Berghoff, of Chicago (Robert A. Berghoff, of counsel), for appellee.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

Plaintiff instituted divorce proceedings against his wife (defendant) in September 1974, alleging mental cruelty. After an *ex parte* hearing, a divorce decree in plaintiff's favor incorporating a written property settlement agreement was entered by default in December 1974. Ten months later, defendant filed a petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 72), requesting the court to vacate the property settlement and child custody provisions of the decree.

In an evidentiary hearing on the section 72 petition, after the close of defendant's case, the court sustained plaintiff's motion to deny the petition. Defendant appeals that order. During the section 72 proceedings, the trial court entered an order which provided that half the proceeds of the sale of the marital residence were to be under the joint

control of plaintiff's and defendant's respective attorneys. Plaintiff has requested an order releasing those funds and interest thereon.

The parties, who were married in 1966, had two children, born in 1966 and 1970. In June 1974, defendant told plaintiff of her friendship with another man. She continued this friendship despite plaintiff's protestations, and married the man 2 days after her divorce. During the period plaintiff and defendant were discussing the divorce, defendant was not represented by an attorney. Plaintiff's attorney previously had represented both parties and had been a friend of both.

Prior to the filing of the complaint, defendant left the marital residence, rented an apartment, and began working as a registered nurse. Shortly afterward, early in October 1974, defendant received a copy of the property settlement agreement she eventually signed. The agreement stated that defendant "according to her desire" was "not represented by counsel." Under its terms plaintiff received the care, custody, control and education of the two children, while defendant, their mother, was given reasonable visitation rights. In addition, the agreement provided that she waived her rights to alimony. Defendant conveyed her title and interest in their home to plaintiff, who then became liable for the mortgage and all other related expenses. The instrument also covered the allocation of their bank accounts or safety deposit boxes, insurance policies and pension plans, savings bonds, furnishings and personal effects, including the two family automobiles.

Defendant testified that she read the agreement in its entirety and reread portions. After reading the agreement, she called plaintiff's attorney and spoke to him for about 10 minutes. She said she was concerned with surrendering her future rights to custody of the children, and did not discuss any other aspects of the settlement. According to defendant's testimony, after the attorney assured her that she could at any time, with or without an attorney, return to court for custody of the children, she read the document through again at least once more and signed it, although she never showed the written agreement to anyone else before signing it.

Defendant alleges in her section 72 petition that the divorce decree incorporating the property settlement agreement was procured while defendant was not represented by counsel, and after plaintiff's attorney had misrepresented to her the rights she would have in the future to regain custody of her children. Defendant is not asking that the decree be set aside, but only that the portions relating to child custody and property division be vacated.

■■ ■ A section 72 petition invokes a court's equitable powers to prevent the enforcement of a default judgment attended by unfair, unjust or unconscionable circumstances. (*Elfman v. Evanston Bus Co.* (1963), 27

Ill. 2d 609, 613, 190 N.E.2d 348; *Leach v. Leach* (1975), 26 Ill. App. 3d 241, 244, 325 N.E.2d 19.) The law favors resolution of differences between husband and wife by property settlement agreements incorporated into a decree of divorce, and all presumptions are resolved in favor of their validity. (*Guyton v. Guyton* (1959), 17 Ill. 2d 439, 444, 161 N.E.2d 832; *Bellow v. Bellow* (1976), 40 Ill. App. 3d 442, 447, 352 N.E.2d 427; *Lagen v. Lagen* (1973), 14 Ill. App. 3d 74, 78-79, 302 N.E.2d 201.) However, such agreements will be vacated and set aside if procured through fraud or coercion (*Roth v. Roth* (1970), 45 Ill. 2d 19, 23, 256 N.E.2d 838) or if not reasonably fair and sufficient in light of the parties' circumstances and stations in life. *James v. James* (1958), 14 Ill. 2d 295, 305, 152 N.E.2d 582; *Crawford v. Crawford* (1976), 39 Ill. App. 3d 457, 462, 350 N.E.2d 103.

■■ To be fraudulent, a misrepresentation must consist of a statement of material fact, false and known to be false by the party making it, made to induce the other party to act in reliance on the truth of the statement, and acted upon by the party to whom the misrepresentation was directed. (*Roth.*) Fraud must be established by clear and convincing evidence. *Garmisa v. Garmisa* (1972), 4 Ill. App. 3d 411, 423, 280 N.E.2d 444.

■■■ In this case, defendant, who bears the burden of proof on the section 72 petition, has failed to establish fraud. Her unverified petition alleges that she had been assured by plaintiff's attorney that her rights for future custody would not be prejudiced either by the agreement or by the taking of a default. In an affidavit attached to her petition, she contended that she had been told by plaintiff's attorney that she could obtain a change of custody of the children at a later date, when she had obtained housing and a job. However, her testimony in court did not support the allegation in her petition or substantiate the statement in her affidavit. Her testimony, both on direct and cross-examination, was that the attorney told her she could at any time, with or without an attorney, return to court for custody of the children. We conclude, as the trial court did, that she had no basis for inferring from the attorney's comment that custody would be granted to her automatically or that the children would be given to her merely on her demand.

Nor does her testimony show that she was informed her agreement to give up custody would have no bearing on any future attempt she might make to change custody. It appears from defendant's testimony that plaintiff's attorney told her only that custody when granted is subject to modification, and this is not a misrepresentation. Defendant's in-court testimony falls short of clearly and convincingly establishing the existence of a fraudulent misrepresentation, and the denial of her section 72 petition was not against the manifest weight of the evidence.

■■ Although defendant seeks relief in her petition because she was not represented by counsel when the settlement was negotiated, the

agreement itself expressly stated that she "according to her desire is not represented by counsel," and that her husband was so represented. Defendant was an educated woman; at the hearing she testified that she possessed an associate degree from a community college, and a registered nurse's certificate. She read the property settlement agreement several times in the privacy of her own apartment, over a period of approximately 1 week. Under these circumstances there is no basis for concluding that defendant did not understand or intelligently consent to the terms of the property settlement agreement, despite her not being represented by an attorney, or that she was coerced.

Not only was the property settlement agreement defendant signed not obtained by fraud or coercion; neither was it proven unreasonably unfair and insufficient in light of the two parties' circumstances. By its terms, defendant received $500 cash and one of the two family automobiles. She and her husband made provision for their other assets, such as bank accounts, personal property and insurance policies. Although plaintiff received custody of the children and sole title to the couple's home, which defendant testified was worth $20,000 when purchased and $30,000 when the settlement was reached, he also assumed the financial responsibilities of providing for the children and of paying the mortgage on the house. Defendant does not claim that any misrepresentations were made to her regarding the plaintiff's assets and there was no showing that the trial court's finding in the divorce decree that the agreement was "fair and reasonable" was an abuse of discretion. In the absence of such a showing, the trial court's decision regarding the terms of the property settlement should not be disturbed.

Accordingly, the judgment of the trial court is affirmed and an order releasing the plaintiff's funds deposited pursuant to the trial court's order, and any interest earned thereon, will be entered.

Judgment affirmed and cause remanded for entry of an appropriate order relating to plaintiff's funds.

JIGANTI and McGILLICUDDY, JJ., concur.