*In re* MARRIAGE OF PATRICK LAWRENCE BECK, Petitioner-Appellee, and JANICE MARY BECK, Respondent-Appellant.

Second District   Nos. 79-218, 79-441 cons.

Opinion filed May 5, 1980.

John D. Kightlinger, of Meinhardt & Kightlinger, of Arlington Heights, for appellant.

William G. Rosing, of Rosing, Carlson and Magee, of Waukegan (Stephen G. Applehans, of counsel), for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Janice Mary Beck (wife) appeals from an order dismissing her petition to vacate a judgment of dissolution of her marriage with Patrick Lawrence Beck (husband), and from an order denying post-decretal relief.

The judgment of dissolution, which included a disposition of property rights based upon an alleged oral agreement which the wife disputes, was entered on August 29, 1978. The wife filed a petition to vacate the judgment on November 9, 1978, pursuant to section 72 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72). She has, essentially, alleged two grounds for granting her petition to vacate the judgment of dissolution: (1) that a fraud was committed upon the court resulting in the entry of the judgment; and (2) that it was manifestly unfair and inequitable.

For several months prior to July 1978, the husband and wife had not been getting along and had generally discussed divorce. The wife testified on cross-examination that she had discussed the disposition of the car, the house and the custody of the child with her husband but that they

"never came up with an agreement." She said the discussion as to the type of settlement she might agree to was "[s]ort of" that she would take the car and he would keep the van providing he made payments on it and he would make mortgage payments on the house which he was going to keep. She also said that she "in a way" agreed to the husband having custody of the child.

On July 1, 1978, the husband told the wife that he had an appointment with an attorney whom the wife had never met. At the meeting the attorney (who is not the attorney representing the husband on the appeal) told them that before he started any papers "he wanted to make sure that this is what [they] both wanted." The wife testified that the husband said, "yes it was." She said "the next thing I knew papers were being thrown at me to be signed." She signed them because she "didn't know what was going on."

The attorney prepared a handwritten document while the parties were in his office. The document admitted into evidence was addressed to an attorney whom the wife did not know, and contained the following:

"Dear Mr. [Attorney]:

Please represent me in the divorce filed by my husband in Lake County, Illinois. I do not wish to contest the divorce, however, I want the following items in the decree. They are:

Number 1, we both waive maintenance (alimony).

2, I retain my 1972 Oldsmobile.

3, my husband keeps his 1978 Chevy van and pays the loan on it.

Number 4, my husband will retain as his sole property his home and furnishings at 1505 Leslie, Round Lake Beach, and be responsible for the mortgage on it.

Number 5, each party will retain their personal effects and clothing.

Number 6, my husband shall have custody of our minor child, Jennifer Marie, and I shall have reasonable visitation rights.

Number 7, my husband shall pay all attorney's fees and costs." (Petitioner's exhibit No. 2.)

The wife signed the document and was given a copy. She and her husband left the attorney's office and went home together. The wife testified that she at no time made an appointment with the attorney named for her to discuss the divorce and that he at no time contacted her.

The attorney in question testified that he had "no understanding with Mrs. Beck whatsoever," that she never called him and he did not speak with her at any time.

On August 9, 1978, the husband and his attorney appeared in court

with the attorney designated for the wife for a hearing on the petition for dissolution. The designated attorney advised the court that he represented the wife and was given leave to file an answer to the petition for dissolution. The answer was prepared by the husband's attorney and had never ben discussed with the wife. In the answer the designated attorney admitted that the parties acquired certain marital and nonmarital property, and that there was no arrangement concerning custody and property. He testified that he did not know whether the wife knew what marital and nonmarital property was at the time the wife signed exhibit No. 2. He also testified that the only information he had at the time of the hearing as to the oral property settlement agreement was that he had been so informed by the husband's attorney and by the husband. He was paid a fee by the husband.

After hearing the proveup by the husband the court continued the cause to August 29, 1978, and the judgment was entered on that date.

The testimony also showed that the husband and wife had continued to live together until September 6, 1978, when the husband forced her to get out. She testified she knew nothing about the court hearing; and that she made several efforts to contact the husband to discuss her being thrown out and with reference to visitation with the minor child. She contacted an attorney at the beginning of October and then, according to her testimony, for the first time found out about the entry of the judgment in August.

There was also testimony that the wife received a bed, a dresser and a 1972 Oldsmobile; that she worked as a file clerk and earned $94 per week and did not work prior to that time; that her health was not very good and that she had consulted a physician as to a thyroid problem. In the judgment the husband received a 1978 Chevy van, subject to money owed thereon, as well as the marital home and furnishings, subject to mortgage, and was also given custody of the minor child. The judgment also recited that both parties waived maintenance and the husband would pay all attorney's fees and costs. The husband was self-employed and worked for an electric company. However, no evidence of his earnings or the value of property was adduced.

Following the dismissal of the wife's petition to vacate the judgment, the wife filed a subsequent motion to vacate that order and petitioned for attorney's fees. The trial court denied the motion to vacate its prior order and ordered the husband to pay $250 in attorney fees. The trial court also denied the wife's motion for a temporary restraining order and a stay of judgment pending appeal.

■█ █ Agreements to settle property rights, "if fairly made and in good faith," will be enforced; but they will "be set aside and vacated for fraud or coercion practiced by either party, or if contrary to any rule of law,

public policy or morals." (*James v. James* (1958), 14 Ill.2d 295, 305.) A petition filed under section 72 of the Civil Practice Act may appropriately be pursued to vacate or modify a decree which has been procured through the fraud of either party. (*Roth v. Roth* (1970), 45 Ill.2d 19, 23.) "The section 72 remedy * * * is principally designed to give relief to those whose interests are inequitably treated before a trial court, * * *." (*Leach v. Leach* (1975), 26 Ill. App. 3d 241, 244.) Where a court is led by one of the parties to believe an agreement has been reached and there has been none, a fraud has been perpetrated on the court. (*Leach v. Leach* (1975), 26 Ill. App. 3d 241, 245.) One test of materiality of a representation alleged to be fraud upon the court is a determination whether the court would have approved the settlement had it known the facts. (*Semmens v. Semmens* (1979), 77 Ill. App. 3d 936, 941.) Under the Illinois Marriage and Dissolution of Marriage Act "conditions that justify the reopening of a judgment under the laws" permit the revocation or modification of provisions as to property disposition. Ill. Rev. Stat. 1977, ch. 40, par. 510(a).

Applying these principles to the facts before us, we conclude that the trial court erred in dismissing the wife's section 72 petition.

The determination of the trial court that a settlement agreement had been voluntarily entered into is against the manifest weight of the evidence. The letter which the husband's attorney prepared and which the wife signed was addressed to any attorney designated by her husband's attorney and whom she did not know. The letter does not clearly amount to a final property settlement agreement by its terms. It purports to be an expression of terms the wife *wanted* to appear in any judgment to be entered. The wife testified that she believed she was merely signing a preliminary agreement and that she would be contacted by her attorney before any papers were to be drawn up. She testified that nothing was explained to her as "if he ever wanted to sell the house if I get anything out of the house or if I get anything out of any property that we own." At any rate it is undisputed that the husband's attorney did not say anything to the wife with regard to her rights in the property, and did not explain to her the difference between marital and nonmarital property. The record does not show clearly what rights were explained to the wife regarding custody of the child. The attorney who was designated to represent her prepared the answer to the dissolution petition without any inquiries made to the wife regarding its contents. At no time during the entire course of the dissolution proceedings did the wife's attorney ever speak with her regarding the petition for dissolution or the handwritten agreement. The wife's attorney did not know whether, at the time she signed the handwritten agreement, the wife knew what marital and nonmarital property was. The answer to the petition for dissolution

which he filed indicated that no agreement existed for custody or visitation rights at the time of its filing.

Moreover, testimony at the dissolution hearing indicated that the wife's representative received his information that there had been an acquiescence to the provisions of the letter from information he received from the husband or the husband's attorney "outside the corridor" just prior to the dissolution hearing.

The record of the proceedings supports the view that the judge proceeded under the belief that the wife's attorney did, in fact, represent her and that she was agreeing to the items noted in her letter with finality when, in fact, the wife had not been contacted.

The apparent unfairness of the purported agreement, which the trial court characterized as a "bad deal," enhances the likelihood that the court would not have accepted the supposed settlement if it had been fairly apprised of the facts at the time.

It it also evident that the wife acted with reasonable diligence in protecting her rights. Her testimony that she was not told at any time about the court hearings or entry of judgment stands unrefuted. She was forcibly evicted from her home by her husband approximately one week after the dissolution judgment had been entered. Although she waited approximately one month prior to seeking legal advice which led to her filing the petition, we cannot conclude that she acted without reasonable diligence under all the circumstances.

The circumstances which were not made known to the court call for an additional comment. The practice of one spouse's attorney selecting and designating an attorney for the other, the preparation of the appearance and the signing of the authorization for such representation without the spouse's consultation with the selected attorney, can only lead to inequities in most cases. This is particularly true when, as here, one spouse is not present at the prove up. We condemn the procedure.

■ The order of the trial court which allowed the wife's attorney's fees in the amount of $250 and which the wife claims is inadequate is, however, affirmed. The allowance, pursuant to section 508(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 508(a)) was within the sound discretion of the trial court. *In re Marriage of Pedersen* (1979), 77 Ill. App. 3d 716, 720.

■ The main thrust of the wife's section 72 petition and the argument made on her behalf at the hearing was that she was without the benefit of independent counsel and that therefore the purported property settlement agreement was unconscionable and void. No allegations were made or evidence adduced tending to show that grounds for dissolution were not proved. There is thus no basis upon which to vacate that portion of the August 29 judgment dissolving the marriage. We therefore affirm

that part of the trial court's order dismissing the section 72 petition insofar as it sought to vacate the dissolution. However, we reverse the dismissal of the wife's petition as to all other issues and remand the cause to the trial court with directions to conduct further hearings limited to the issues of property division, maintenance, and custody. (See *Harris v. Harris* (1977), 45 Ill. App. 3d 820, 824.) The wife's claim that the trial court erred in denying the motion for a temporary restraining order and for a stay pending appeal is moot.

Affirmed in part, and reversed and remanded in part with directions.

WOODWARD and NASH, JJ., concur.